# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FameFlynet, Inc.,                    )
                                     )
      Plaintiff,               )
                                     )   No. 17 C 4749
      v.                       )
                                     )
Jasmine Enterprises, Inc.,           )   Judge Thomas M. Durkin
                                     )
      Defendant.               )

## MEMORANDUM OPINION & ORDER

Plaintiff FameFlynet Inc. ("FFN") brings a copyright claim against defendant Jasmine Enterprises, Inc. for alleged infringement of FFN's copyright in three photographs of Nicky Hilton and James Rothschild taken at their July 10, 2015 celebrity wedding ("the Hilton-Rothschild Photos"). Currently before the Court is FFN's motion for summary judgment as to liability [58]. For the reasons explained below, the Court grants FFN's motion.

## Background

FFN is a California-based company that provides photojournalism services and owns the rights to many photographs, primarily featuring celebrities, which it licenses to online and print publications for profit. R. 84 ¶¶ 1-3 (Jasmine's L.R. 56.1 Response to FFN's Statement of Material Facts).[1] Among FFN's copyrighted

---

[1] Jasmine often responds to FFN's statements of material fact by saying that Jasmine "lacks sufficient knowledge to form a belief as to the truth of this statement" or by disputing the fact without citing record evidence in support. *See* R.

photographs are the Hilton-Rothschild Photos taken at Hilton and Rothschild's July 10, 2015 wedding. *Id.* ¶ 17. Since the wedding, FFN has sold a number of licenses to the Hilton-Rothschild Photos. The highest fee it received for the Photos was $2,500 from People Magazine. *Id.* ¶ 21; R. 91 ¶ 18 (FFN's Reply to Jasmine's L.R. 56.1 Statement of Additional Facts). FFN made seven additional sales of the Photos in July 2015, the highest of which was for $300. R. 91 ¶ 16. FFN registered the Hilton-Rothschild Photos with the United States Copyright Office on September 24, 2015. R. 84 ¶¶ 18-19.

Jasmine is an Illinois-based company that sells wedding dresses out of a retail store, owns and operates a website (www.jasminegalleria.com), and operates a blog with posts on fashion trends and news about weddings (http://jasminegalleria.com/blog). *Id.* ¶ 12; R. 91 ¶¶ 1-2. In October 2015, FFN observed the Hilton-Rothschild Photos on Jasmine's blog, along with the comment: "Now without further ado . . . let's discuss THE dress . . . Isn't that a dream? Elegant and timeless," along with a photo of a similar-looking Jasmine wedding dress and the caption "Real Celebrity Wedding . . . Acquire It! Jasmine Couture Style F161069." R. 84 ¶ 22; R. 91 ¶ 12; R. 85-2 at 68-69. Jasmine employee Allison Paschold originated this posting in August 2015. R. 84 ¶¶ 23-26. The blog post gave

---

84. These responses are deemed admissions under Fed. R. Civ. P. 56 and L.R. 56.1, which require citation to specific evidence to establish a fact dispute. *See, e.g.*, *Ortega v. Chicago Pub. Sch. of the Bd. of Educ. of the City of Chicago*, 2015 WL 4036016, at *1-2 (N.D. Ill. June 30, 2015) (responses without citation to the record and statements that respondent "has insufficient knowledge" are "inappropriate at the summary judgment stage," meaning that these facts, if well-supported, are "deemed admitted").

credit for the images to "POPSUGAR.com." R. 91 ¶ 13. Neither Jasmine nor Allison Paschold had FFN's permission to copy or display the Hilton-Rothschild Photos. *Id.* ¶ 28. After the blog posting date, FFN continued to sell licenses to the Hilton-Rothschild Photos for amounts ranging from $11.73 to $250. R. 85-2 at 62.

FFN's president Boris Nizon lacks specific knowledge about Jasmine, its website, its blog, or any financial benefits Jasmine receives from them. R. 91 ¶¶ 3, 6-7, 9. As a general matter, however, FFN's business model of acquiring celebrity photos and selling them to online and print media outlets depends on being able to control the timing and volume of the distribution of its photos. R. 84 ¶ 7. When a photograph is stolen, FFN loses the ability to control that photograph's exclusivity, *id.* ¶ 9, and when a photo is leaked to the public, the value of the photograph usually diminishes immediately, *id.* ¶ 10. The value of photos typically goes down as they get older. R. 91 ¶ 15.

FFN sued Jasmine for copyright infringement in the Southern District of New York in September 2016. R. 1. The Southern District of New York granted Jasmine's motion to change venue in June 2017. *See* R. 45. That same month, FFN rejected Jasmine's offer of judgment under Fed. R. Civ. P. 68 for $15,000 including attorney's fees. R. 83-3. FFN instead has elected to recover statutory damages as well as attorney's fees. In September 2017, FFN moved for summary judgment as to liability only. R. 58.[2]

---

[2] Jasmine has filed a surresponse to FFN's motion for summary judgment (R. 96) taking issue with FFN's counsel's affidavit filed in support of FFN's motion for summary judgment (R. 61). Jasmine claims that FFN's counsel should not be able to

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

---

submit an affidavit in support of summary judgment while taking the position that he is not a witness in this case. Jasmine takes particular issue with four statements FFN's counsel makes in his affidavit about the purpose of Jasmine's blog, including statements that it is "a popular and lucrative enterprise that purposefully displays celebrity and/or news photographs," that it is used "to sell merchandise," and that Jasmine receives financial benefits from the blog in the form of increased traffic to its website. R. 61 ¶¶ 8-9, 19, 21. FFN relies on these assertions by its counsel as its sole support for ¶¶ 13, 14, 30, and 33 of FFN's L.R. 56.1 Statement of Material Facts (R. 59).

Jasmine is correct that ¶¶ 8-9, 19, 21 of FFN's counsel's affidavit recite improper substantive testimony without record support and without a showing of a basis for personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support . . . a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The Court therefore strikes these four statements from FFN's counsel's declaration. The Court also strikes ¶¶ 10-14 of FFN's counsel's declaration, which merely repeat statements from the declaration of FFN's president Nizon as to which FFN's counsel has not made a showing of personal knowledge. (FFN cites Nizon's declaration—not its counsel's declaration—in support of these statements in its L.R. 56.1 Statement of Material Facts (R. 59).) But the Court declines to strike the remainder of FFN's counsel's declaration, which introduces and recites facts from attached discovery responses. It is customary for counsel to submit a declaration authenticating and reciting basic facts from discovery exchanged in a case.

The Court also declines Jasmine's request for sanctions against FFN's counsel under Fed. R. Civ. P. 11. This is not a situation where counsel should have known the facts did not support his client's claims but made the claims anyway, as in *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 824 (7th Cir. 2001), on which Jasmine relies. As FFN's counsel points out in his declaration responding to Jasmine's surresponse, Jasmine does not deny the accuracy of any of the facts in FFN's counsel's declaration based on any evidence or declaration of its own. Indeed, FFN's counsel cites record support for these statements in his reply declaration. In other words, Jasmine has not shown that the facts recited by FFN's counsel are inaccurate, but only that they were not presented in a procedurally proper manner. Sanctions are not warranted.

4

322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

Copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Jasmine does not dispute that FFN has established these elements. FFN has produced valid copyright registrations for the Hilton-Rothschild Photos, which constitutes *prima facie* evidence of the copyrights' validity. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914-15 (7th Cir. 2007). Jasmine has not rebutted that *prima facie* evidence. And there is no dispute that Jasmine copied the Hilton-Rothschild Photos and displayed them on its blog.

Jasmine instead asserts that summary judgment should be denied based on its affirmative defense of fair use. "Fair use is a mixed question of law and fact, which means that it may be resolved on summary judgment if a reasonable trier of

fact could reach only one conclusion—but not otherwise." *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). "The burden of proof is on the [defendant] because fair use is an affirmative defense," meaning that the defendant must present "evidence sufficient to withstand summary judgment." *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003).

Congress has provided four statutory factors for courts to consider in evaluating a fair use defense. They are: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. "[T]he four factors . . . are not exhaustive and do not constitute an algorithm that enables decisions to be ground out mechanically." *Chicago Bd. of Educ.*, 354 F.3d at 629; *accord Ty*, 292 F.3d at 522 ("the four factors are a checklist of things to be considered rather than a formula for decision"). "The general standard, however, is clear enough: the fair use copier must copy no more than is reasonably necessary (not strictly necessary—room must be allowed for judgment, and judges must not police criticism with a heavy hand) to enable him to pursue an aim that the law recognizes as proper." *Chicago Bd. of Educ.*, 354 F.3d at 629. The Court first considers the factors one at a time and then as a whole.

## A.    First Factor – Purpose and Character of Use

The first factor requires courts to determine not "whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985). Jasmine is a for-profit business selling wedding dresses, in connection with which it operates a blog that displays wedding dresses and comments on them. In this case, it posted the Hilton-Rothschild Photos along with a photo of a similar-looking Jasmine dress and the caption "Real Celebrity Wedding . . . Acquire It! Jasmine Couture Style F161069." R. 85-2 at 68-69.

Jasmine attempts to distinguish its blog from its website and suggest that the blog could be considered to be for "nonprofit educational purposes," 17 U.S.C. § 107, based on the lack of record evidence that Jasmine makes money from the blog itself. But Jasmine presents no affirmative evidence that it does not make money from the blog itself, which is its burden. *See Chicago Bd. of Educ.*, 354 F.3d at 629 (the defendant must present "evidence sufficient to withstand summary judgment" on fair use). And even if it is true that Jasmine makes no money directly from the blog, "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002). The only reasonable inference from the facts in the record is that Jasmine's blog is designed to act as a draw for customers,

regardless of whether Jasmine makes money from the blog itself. Jasmine cites no testimony from its representatives or other evidence to the contrary.

The first prong of the fair use inquiry also asks whether copying "permissibly 'transforms' and thus 'complements' the original, as opposed to creating a 'substitute' that 'supersedes' the original." *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 3368893, at *9 (N.D. Ill. July 8, 2014) (quoting *Ty*, 292 F.3d at 518)); *accord Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Here, Jasmine presents no evidence that it "add[ed] something new . . . altering the first with new expression, meaning, or message" when it displayed the Hilton-Rothschild Photos along with commentary about Nicky Hilton's dress. *Campbell*, 510 U.S. at 579. Instead, the only inference supported by the evidence is that Jasmine used the copyrighted Photos in the same way those who purchased licenses typically would use them—to show a celebrity wedding and comment on the images—and did so "without paying the customary price." *Harper & Row*, 471 U.S. at 562.

This case is nothing like *Miller UK Ltd. v. Caterpillar Inc.*, 2015 WL 6407223 (N.D. Ill. Oct. 21, 2015), on which Jasmine relies. The *Miller* court found fair use where Miller copied a Caterpillar bulletin promoting a Caterpillar product, but added annotations disputing Caterpillar's claims and highlighting the advantages of Miller's product. *Id.* at *7. The court found that "the first of the statutory fair use factors weighs in favor of fair use" because "the commercial value to Miller and any resulting decline in the commercial value of the original work resulted not from the value of the original, but from Miller's [critical] additions"—a non-substitute use

that is "encouraged by the fair use doctrine." *Id.* at *8. Here, by contrast, Jasmine's use of the Hilton-Rothschild Photos was not for criticism or a related purpose. It was a substitute use.

As explained in n.1 above, this Court has stricken four statements of fact made in a declaration filed by FFN's lawyer about the purposes of Jasmine's blog (R. 61 ¶¶ 8-9, 19, 21). But that does nothing to move the needle in Jasmine's favor. The same is true for FFN's president's lack of knowledge about the purpose of Jasmine's blog. Jasmine has the burden of proof on its affirmative defense, *Chicago Bd. of Educ.*, 354 F.3d at 629, and it has failed to supply evidence creating a fact issue as to the purpose and character of its use. Discrediting FFN's evidence or emphasizing FFN's president's lack of knowledge is no substitute for supplying Jasmine's own evidence. This factor weighs against a finding of fair use.

## B.      Second Factor – Nature of Copyrighted Work

The second "factor calls for recognition that some works [like fiction] are closer to the core of intended copyright protection than others [like news broadcasts or factual compilations], with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. The parties debate whether the Hilton-Rothschild Photos are factual or creative in nature. Some circuits have found that photographs, even if taken partly for informative purposes, can still be creative. *See Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012) (amateur photograph of wet t-shirt contest had "a mixed nature of fact and creativity"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003)

("Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature."). Other courts have found photos of famous persons at an event to be "primarily factual in nature." *E.g.*, *Galvin v. Illinois Republican Party*, 130 F. Supp. 3d 1187, 1195 (N.D. Ill. 2015). Given that photographs appear to fall somewhere in the grey area between factual and creative work, the Court finds this factor neutral.

### C.  Third Factor – Amount and Substantiality of Portion Used

The third factor "recognizes that the more of a copyrighted work that is taken, the less likely the use is to be fair, and that even a less substantial taking may be unfair if it captures the essence of the copyrighted work." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998) (citing *Harper & Row*, 471 U.S. at 564-65). Jasmine's blog undisputedly copied the entire copyrighted works. Although wholesale copying does not preclude fair use *per se*, it mitigates against a finding of fair use. *See id.*; *Kelly*, 336 F.3d at 820.

### D.  Fourth Factor – Effect of Use on Potential Market

The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. The Seventh Circuit has said that this factor is "usually" "the most important." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014).

Jasmine says that based on the evidence of FFN's sales of the Hilton-Rothschild Photos before and after the blog post, Jasmine's use of these particular Photos did not reduce their value (at least not substantially). But this argument ignores the question of "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590; *accord Harper & Row*, 471 U.S. at 568 ("to negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work") (emphasis in original). On this point, it is undisputed that when a photograph is stolen, FFN loses the ability to control that photograph's exclusivity, and that the value of a photograph is usually diminished when a photo is leaked. R. 84 ¶¶ 9-10. While this case involves a mere "[i]solated instance[ ] of minor infringement[ ]," such instances, "when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented." *Harper & Row*, 471 U.S. at 566-67; *accord Galvin*, 130 F. Supp. 3d at 1196. As FFN notes, allowing any website to copy a photograph after it is first published would mean that a photograph could only be sold once. This factor weighs against a fair use defense.

### E.     Holistic Assessment

As this Court explained in *Leveyfilm*, 2014 WL 3368893, at *9:

> The Seventh Circuit's analysis in *Ty* demonstrates that the dichotomy at the heart of the first factor between new works that transform and complement the original versus new works that serve as a substitute for and supersede the original is best understood in terms of the fourth factor, *i.e.*, the effect the new work has on the market for the original work. An analysis that properly combines the first and fourth factors

generally results in fair uses that fall into one of two categories: (1) a use that enhances the market for the original work (*i.e.*, book reviews); or (2) a use that creates a new market for the new work that references the original work and does not detract from the original work's market (parody).

There is no evidence that Jasmine's use of the Hilton-Rothschild Photos either enhanced the Photos' fair market value like a book review or created a new market like a parody. A consideration of the first and fourth factors together thus further weighs against a fair use defense.

Jasmine relies on three main fair use cases involving photographs in support of its contrary position. All are readily distinguishable, first and foremost because they each involved use of a photograph for parody or criticism. *See Ty*, 292 F.3d at 518 ("A parody, which is a form of criticism . . . is not intended as a substitute for the work parodied.").

Jasmine points to the Seventh Circuit's decision in *Kienitz*, where a photographer sued an apparel company for copyright infringement based on its t-shirts displaying a heavily modified version of a copyrighted photograph of the Mayor of Madison, Wisconsin. 766 F.3d at 757. The t-shirts intended to mock the Mayor for trying to shut down an annual block party, and bore the slogan, "Sorry for Partying." *Id.* The district court granted summary judgment on the apparel company's fair use defense, and the Seventh Circuit affirmed. The Seventh Circuit emphasized that "[a] t-shirt . . . is no substitute for the original photograph," and there was no evidence that "defendants disrupted a plan to license this work for apparel." *Id.* at 759. The purpose of the t-shirts was instead to "mock the Mayor" "as

a form of political commentary." *Id.* Also, defendants had "removed so much of the original that, as with the Cheshire Cat, only the smile remain[ed]." *Id.* The Seventh Circuit acknowledged that repeated uses like the apparel company's "may injure [the photographer's] long-range commercial opportunities," because he "promises his subjects that the photos will be licensed only for dignified uses." *Id.* But Kienitz did not "present an argument on those lines," and this consideration did not "offset the fact that, by the time defendants were done, almost none of the copyrighted work remained." *Id.* at 760. Here, unlike in *Kienitz*, the images were identical, and FFN not only had a plan to license the Hilton-Rothschild Photos, but had licensed them numerous times as part of its business.

Jasmine also relies on *Galvin*. But the *Galvin* court found that a satirical flyer depicting a copyrighted photo of a political parade would not "plausibly cut into demand for the Photograph" largely because the flyer was a "complement" rather than a "substitute." 130 F. Supp. 3d at 1196. "Anyone who wants an accurate depiction of the political parade" depicted in the photo, the court explained, "would not plausibly license the Flyer instead." *Id.* That is not the situation here, for reasons already explained.

Finally, Jasmine relies on *Katz v. Chevaldina*, 2014 WL 2815496 (S.D. Fla. June 17, 2014), where the defendant blogger posted a copyrighted photo of the plaintiff in highly critical blog articles about the plaintiff. *Id.* at *1. But in that case, the blog was explicitly non-commercial, and the court found the "use of the Photo . . . transformative because it served a very different function [criticism] than did its

original use." *Id.* at *6-8. The plaintiff stipulated to the lack of any economic harm, and plaintiff did not show that any market existed for the photo. *Id.* at *9. These are not the facts here.

In sum, under the "general standard" set forth in *Chicago Bd. of Educ.*, Jasmine undisputedly copied the entirety of the Hilton-Rothschild Photos, and Jasmine has not met its burden of "present[ing] . . . evidence" showing that it used the copyrighted works "to pursue an aim that the law recognizes as proper." *See* 354 F.3d at 629. Jasmine does not distinguish its use from other uses for which third-parties paid good money to license the Hilton-Rothschild Photos. The Court therefore does not find any fact issues on Jasmine's fair use defense that warrant a trial as to liability.

## Conclusion

For the foregoing reasons, FFN's motion for summary judgment as to liability [58] is granted.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: September 25, 2018