UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FAMEFLYNET, INC.,

           Plaintiff,

           v.

JASMINE ENTERPRISES INCORPORATED,

           Defendant.

No. 17 C 4749

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

FameFlynet, Inc. (FFN) brought this action against Jasmine Enterprises for copyright infringement after Jasmine posted celebrity wedding photos on its company blog. In January 2019, the parties stipulated to the facts, evidence, and a statutory damages award, reserving only their claims to attorneys' fees. R. 110. Now before the Court is FFN's petition for attorneys' fees and costs [113], and Jasmine's motion to strike FFN's motion [119]. For the following reasons, Jasmine's motion to strike is granted in part and denied in part, and FFN is awarded $10,500 in attorneys' fees and costs.

## Background

This case exemplifies the familiar adage of cutting off your nose to spite your face. Less than two months after FFN filed its complaint in the fall of 2016, the parties ended settlement negotiations because they could not bridge the $1,000 gap between the $16,000 demand and $15,000 offer. Now, over two-and-a-half years later,

and after a stipulated statutory damages award of only $5,000, FFN requests attorneys' fees totaling $241,443.77.

The underlying facts will not be repeated at length here.[1] FFN owns copyrights to 46 photographs of Nicky Hilton and James Rothschild from the couple's July 2015 wedding. R. 110 ¶¶ 14-16. That August, an employee of Jasmine Enterprises, a wedding dress retailer, posted three of those photos on the company's blog without FFN's permission. *Id.* ¶¶ 13, 21; R. 84 ¶ 23. FFN observed the photographs that October, sent a cease-and-desist letter the following June, and sued Jasmine for copyright infringement in the Southern District of New York in September 2016. R. 110 ¶¶ 18, 25; R. 1.[2] Less than one month after Jasmine was served, FFN demanded $16,000 to settle the case. R. 114 ¶ 9. FFN arrived at that amount by multiplying the highest licensing fee FFN had received for a Hilton-Rothschild wedding photograph by three ($2,500 from People Magazine), and adding to that its attorneys' fees as of that date ($7,800). *Id.* Jasmine countered at $15,000, which FFN's counsel declined, stating: "We will probably never be this close again but no problem. It was a good try. Plaintiff withdraws all offers of settlement. We will reprice after conference/motion/whatever comes next." *Id.* ¶¶ 10-11. Jasmine again offered to settle the case for $15,000 that December and the following February. *Id.* ¶¶ 17, 25. In June 2017, FFN rejected Jasmine's offer of judgment for $15,000, inclusive of attorneys'

---

[1] For a more detailed factual description of the underlying claim, see this Court's September 25, 2018 Order granting summary judgment in favor of FFN as to liability. R. 99.
[2] The case was transferred to the Northern District of Illinois in June 2017. R. 45.

fees. *Id.* ¶¶ 33-34. Meanwhile, FFN's attorneys' fees had climbed to $55,450. *Id.* ¶ 34. For the next year, the parties engaged in discovery disputes, including motions to compel and for sanctions by Jasmine. *Id.* ¶¶ 47, 63.

In September 2018, this Court granted FFN's motion for summary judgment as to Jasmine's liability. R. 99. Following the Court's order, FFN made an all-inclusive $200,000 demand. R.114 ¶ 70. In the subsequent weeks, Jasmine offered $15,000 and then $17,500 to settle the case, which FFN again declined. *Id.* ¶¶ 72, 74.

In lieu of trial, the parties stipulated to the facts and a statutory damages award of $5,000, reserving only their claims to attorneys' fees. R. 110 at 1. FFN then filed its motion requesting $225,567.18 in attorneys' fees and costs and submitted declarations from the following four members of Sanders Law PLLC: Craig Sanders, Erica Carvajal, David Barshay, and Jonathan Cader. R. 113-117. Carvajal's declaration provides a detailed synopsis of the firm's work and interactions with Jasmine. The other declarations attest to the accuracy of FFN's billing records and costs. Shortly thereafter, Jasmine filed its opposition, as well as a motion to strike FFN's motion. FFN then increased its request to $241,443.77 to account for its additional work preparing the reply and its opposition to Jasmine's motion to strike.

## Analysis

### I. Jasmine's Motion to Strike

Jasmine provides a laundry list of reasons why this Court should strike FFN's motion for fees. The Court is largely unpersuaded.

3

First, Jasmine contends that FFN's motion "is predicated almost entirely on inadmissible settlement communications and confidential mediation proceedings," and is thus barred by Federal Rule of Evidence 408.[3] R. 119 at 2. To support its position, Jasmine cites two patent cases from the Eastern District of New York in which the court held settlement negotiations involving attorneys' fees were inadmissible. *See* R. 119 at 2-3; *HR U.S. LLC v. Mizco Int'l, Inc.*, 2010 WL 3924548, at *11 (E.D.N.Y. Sept. 29, 2010) (finding evidence of settlement negotiations inadmissible in request for attorneys' fees in patent case); *Siracuse v. Program for the Dev. of Human Potential*, 2012 WL 1624291, at *20 (E.D.N.Y. Apr. 30, 2012) (finding defendant's reference to settlement offers in opposing plaintiff's request for fees was "inappropriate" and citing *Mizco*). In response, FFN cites several cases that come to the opposite conclusion, including a more recent Eastern District of New York case directly on point. *See* R. 124 at 5; *Fortgang v. Pereiras Architects Ubiquitous LLC*,

---

[3] Federal Rule of Evidence 408 provides:
> (a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

2018 WL 1832184, at *4 (E.D.N.Y. Mar. 9, 2018), *report and recommendation adopted*, 2018 WL 1505564 (E.D.N.Y. Mar. 27, 2018) ("This Court joins others that have held that Rule 408 does not bar consideration of settlement discussions in the context of determining whether attorneys' fees are appropriate under Section 505 of the Copyright Act."); *see also Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) (holding Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award); *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (holding district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorneys' fee award); *Greenwich Film Prods., S.A. v. DRG Records, Inc.*, 1996 WL 502336, at *2 (S.D.N.Y. Sept. 5, 1996) ("While determining the reasonableness of a claim for attorney's fees is not specifically mentioned as a purpose for which evidence of a settlement offer may be considered, strong public policy considerations support its admissibility for that purpose."). Although the Seventh Circuit has not ruled on the issue, the weight of authority supports considering settlement discussions when ruling on whether to award attorneys' fees. That conclusion is consistent with Rule 408, under which the admissibility of evidence depends on whether the evidence is intended to "prove liability of or invalidity of the claim or its amount," or whether it is offered for "another purpose." *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F. Supp. 2d 878, 880 (N.D. Ill. 2005) (quoting Fed. R. Evid. 408). Here, as Jasmine readily acknowledges in its motion to strike, FFN submitted the parties' settlement

negotiations as proof of Jasmine's "litigation conduct." *See* R. 119 at 3-4. As such, the settlement negotiations are admissible for the purposes of FFN's motion.

Jasmine also argues that the Court should strike FFN's motion for fees because FFN breached the Southern District of New York Mediation Program's confidentiality provision by disclosing Jasmine's conduct and settlement offer during the mediation proceedings. This argument also fails. The confidentiality provision provides that "[a]ny communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this section." S.D.N.Y. Procedures of the Mediation Program 2(a) (Dec. 26, 2018).[4] However, Jasmine did not point this Court to one statement made exclusively for the mediation process, and thus there is no basis for striking FFN's motion on that ground.

Jasmine next argues the Court should strike Carvajal's declaration because she was not included in FFN's Rule 26 initial disclosures. Tellingly, Jasmine cites no cases in support of its position. The purpose of discovery rules is to "facilitate the development of the facts underlying a given dispute so that justice may be done *on the merits.*" *Avnet, Inc. v. Motio, Inc.*, 2016 WL 927194, at *4 (N.D. Ill. Mar. 4, 2016) (emphasis added). Here, the merits concern information regarding FFN's infringement claim, not its request for attorneys' fees. Further, to the extent Jasmine argues FFN never disclosed Carvajal, this argument need not be entertained as Carvajal's name appears on top of the docket sheet and thus Jasmine was fully aware

---

[4] Available at
http://www.nysd.uscourts.gov/docs/mediation/Mediation%20Program%20Procedures
.final.2018.pdf

of her connection to the case. *See Gicla v. United States*, 572 F.3d 407, 411 (7th Cir. 2009) ("Rule 26 is designed to avoid surprise . . . .").

Jasmine also contends that the Court should strike portions of Carvajal's declaration because it contains hearsay statements and references to Jasmine's insurance in violation of Federal Rules of Evidence 802 and 411. Turning first to hearsay, Jasmine does not explain the basis for its objections and cites no cases in support of its position. As an initial matter, the Court is not compelled to fill in the gaps in Jasmine's arguments. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011) (arguments that are perfunctory, undeveloped, or unsupported by authority are waived). In addition, as FFN correctly points out, affidavits need not be admissible in form so long as they would be admissible in content. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994). Having reviewed Jasmine's objections and FFN's responses, the statements at issue either do not constitute hearsay, fall under an exception, and/or are admissible in content if not form. Thus, Jasmine's hearsay objections miss the mark.

Jasmine's argument based on Rule 411 is equally unavailing. Rule 411 provides that evidence "a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose . . . ." Fed. R. Evid. 411. Here, FFN mentions Jasmine's insurance in the context of settlement negotiations, not to prove Jasmine acted wrongfully. As such, this argument fails.

Finally, Jasmine argues that the Court should strike FFN's motion to the extent it conflicts with the parties' prior stipulation of facts. The parties' stipulation provides as follows:

> WHEREAS, the Plaintiff and Defendant hereby stipulate that . . . the parties would introduce the following facts and evidence into the record with respect to Plaintiff's pending cause of action, including the resulting claims for statutory damages, *attorneys' fees*, and with respect to Defendant's affirmative defenses and defenses thereto[.]

R. 110 at 1 (emphasis added). The parties previously stipulated that Jasmine removed the infringing photos from its blog the same day it received notice of the infringement from FFN's counsel. *Id.* ¶¶ 25-26 ("On June 22, 2016 . . . FFN first notified Jasmine of alleged copyright infringement . . . . Jasmine immediately removed the entire blog post, including the Subject Photos."). FFN now contends the photographs remained on Jasmine's blog for three months after Jasmine became aware of the infringement. R. 113 at 1-2; R. 114 ¶ 6. The stipulation clearly applies to claims for attorneys' fees, and thus remains binding on FFN for its current motion. As such, this Court strikes FFN's motion and Carvajal's declaration to the extent they state that the pictures remained on Jasmine's blog for three months after Jasmine received notice of the infringement.  In all other respects, the motion is denied.

## II.    FFN's Motion for Attorneys' Fees and Costs

The Court now turns to FFN's petition for fees and costs. Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Courts may not award attorneys' fees as a matter of course, but rather must "make a more particularized, case-by-case assessment."

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1985 (2016) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). Among the nonexclusive factors a court should consider when deciding whether to award fees are "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (alteration in original) (quoting *Fogerty*, 510 U.S. at 534, n. 19) (the *Fogerty* factors). While "substantial weight" should be given to the reasonableness of the losing party's position, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 1989. The Copyright Act's primary goal is "enriching the general public through access to creative works" by "encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.* at 1986.

Jasmine does not dispute that FFN is a prevailing party for purposes of a fee award. Rather, it contends that the *Fogerty* factors weigh against awarding fees in this case. For the most part, the Court agrees.

First, Jasmine's defense was not frivolous or objectively unreasonable. In support of its motion, FFN points to the fact that Jasmine did not raise 18 of its 19 affirmative defenses in its opposition to summary judgment. But far from being frivolous, focusing only on its strongest defense – fair use – served judicial economy. *See Frerck v. Pearson Edu., Inc.*, 63 F. Supp. 3d 882, 886-87 (N.D. Ill. 2014) ("[W]hen—as here—the defendant takes a shotgun approach to affirmative defenses, judicial economy is best served by forcing it to identify and argue only those defenses that matter.").

9

As for Jasmine's fair use defense, FFN concedes it was not "frivolous *per se*." R. 122 at 4. Nevertheless, FFN contends that it was still objectively unreasonable given "existing case law." *Id.* In so arguing, FFN points to this Court's summary judgment ruling in which the Court found that three of the four statutory factors for evaluating fair use weighed against applying fair use in this case. But FFN conflates whether a defense was successful with whether it was reasonable. *See Kirtsaeng*, 136 S. Ct. at 1988 ("Courts every day see reasonable defenses that ultimately fail (just as they see reasonable claims that come to nothing); in this context, as in any other, they are capable of distinguishing between those defenses (or claims) and the objectively unreasonable variety."). Losing on the merits does not establish that a party's position was objectively unreasonable. Otherwise, a losing defendant would "virtually *always* be found to have done something culpable." *Kirtsaeng*, 136 S. Ct. at 1988. Here, Jasmine appears to have sincerely advanced its fair use defense. And while ultimately unsuccessful, the defense was neither factually nor legally unreasonable.

Nor was Jasmine's other litigation conduct unreasonable. FFN contends that by merely repeating its $15,000 settlement offer throughout the litigation, Jasmine made no real effort to settle. But that assumes $15,000 was an unreasonable offer. The facts suggest otherwise. Tellingly, $15,000 was three times greater than what the parties settled for *after* this Court ruled in FFN's favor on liability. Moreover, it was many times FFN's licensing fee for the Hilton-Rothschild photos, which ranged from $11.73 to $2,500. Finally, FFN does not point to one demand it made after its

10

initial $16,000 offer until it demanded $200,000 nearly two years later. FFN is at least as culpable as Jasmine for the parties' failed settlement efforts.

FFN also points to an email it received from Jasmine's counsel after this Court's summary judgment ruling to demonstrate Jasmine was motivated by bad faith. In that email, Jasmine's attorney wrote that "[w]e have always viewed damages as a main issue in this case and that has not changed." R. 114-3. FFN contends this response was "remarkable" because the parties had just expended tremendous resources resolving the issue of liability. But viewing both damages and liability as main issues is not inconsistent. Moreover, Jasmine can hardly be expected to throw in the towel after an adverse ruling. Rather than demonstrating bad faith, the email merely establishes Jasmine's attempt to maintain bargaining leverage. In short, neither Jasmine's fair use defense nor its settlement conduct was objectively unreasonable. This conclusion weighs against awarding fees in this case.

Additionally, awarding FFN its substantial requested fees would not advance considerations of compensation and deterrence. Jasmine removed the infringing photos the same day it received notice from FFN's counsel. R. 110 ¶ 26. Furthermore, Jasmine has not posted on the blog since 2015, it does not intend to post in the future, and the employee who posted the infringing photos resigned from the company soon after the post. *Id*. ¶¶ 32-34. Rather than disputing this point, FFN argues that failing to award fees would discourage other potential plaintiffs from pursuing claims. But this Court has a different concern. Far from advancing the Copyright Act's goals, awarding FFN its requested fees would incentivize parties to reject reasonable

11

settlement offers in hope of cashing in on enormous attorneys' fees down the line. *See Greenwich*, 1996 WL 502336, at *2 (S.D.N.Y. Sept. 5, 1996) (explaining in a case in which the parties settled for $40,000 *more than* defendant's initial settlement offer that "[s]ettlements are to be encouraged and a party to an action in which attorney's fees may be awarded should not be allowed to believe that it can reject a reasonable settlement offer and still recover the full amount of its attorney's fees if ultimately it recovers little more than the original offer.").

The Seventh Circuit instructs that the two most important considerations in applying the *Fogerty* factors are the strength of the prevailing party's case and the amount of relief it obtained. *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). Specifically, "the smaller the damages, provided there is a real, and especially a willful infringement, the stronger the case for an award of attorneys' fees." *Id.* at 437. The court reasoned that without the prospect of such an award, parties with meritorious claims or defenses might be deterred from exercising their rights. *Id.* The court explained that the best illustration of this was that a defendant "could not obtain an award of damages from which to pay his lawyer no matter how costly it was for him to defend against the suit." *Id.* With this concern in mind, the court concluded that "the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Id.* (quoting *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002)); *see also Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir.

12

2008) ("[T]he prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees.").

In light of this presumption, FFN argues that it is entitled to fees absent "significant and countervailing circumstances." R. 122 at 2. But this misunderstands both the weight of the presumption and the considerations driving it. Here, neither Jasmine nor its then-employee knew that displaying the photographs would infringe FFN's copyright. R. 110 ¶ 36. Moreover, this is not a case in which Jasmine advanced a frivolous defense and refused to settle. To the contrary, FFN ultimately accepted $10,000 less than what Jasmine repeatedly offered throughout the litigation, an offer that was well within the range of permissible statutory damages. *See* 17 U.S.C. § 504(c)(1) (a copyright owner is entitled to statutory damages "in a sum of not less than $750 or more than $30,000" provided the infringement was not committed willfully); *Music v. Heiman*, 2010 WL 1904341, at *4 (W.D. Wis. May 211, 2010) (awarding $1,000 for each infringement and $5,000 total after the defendant played the plaintiff's songs without licenses); *Malibu Media, LLC v. Brenneman*, 2013 WL 6560387, at *3 (N.D. Ind. Dec. 13, 2013) (finding damages of $1,500 per infringement and $16,500 total was sufficient to compensate the plaintiff and deter future infringement after defendant disseminated portions of eleven copyrighted movies); *see also BWP Media USA, Inc. v. Mishka NYC LLC*, 2016 WL 8309676, at *3 (E.D.N.Y. Dec. 28, 2016), *report and recommendation adopted sub nom. BWP Media USA v. Death Adders Inc.*, 2017 WL 880855, at *3 (E.D.N.Y. Mar. 3, 2017) (finding $7,500 was a "very reasonable" offer of judgment to compensate plaintiff and deter

infringement after defendant posted two infringing photos on a relatively unknown blog).

In short, the nature of Jasmine's infringement and the parties' legal positions and litigation conduct do not justify a substantial fee award. Nevertheless, the fault does not lie exclusively with FFN for failing to settle, and its early work advanced the goals of the Copyright Act. The Court thus awards FFN $10,500 in fees and costs. That is slightly more than the expenses FFN had accrued as of November 2016 when it rejected Jasmine's initial settlement offer, plus its filing fee ($400) and process server costs ($95).[5] This amount, coupled with the $5,000 stipulated statutory damages award, is enough to compensate FFN and deter infringement without rewarding FFN for its decision to forgo settlement in favor of accruing fees.

The past two-and-a-half years of litigation could have been avoided. The parties were $1,000 apart from settling three weeks after FFN served Jasmine with the summons and complaint. For FFN to then incur hundreds of thousands of dollars in fees simply makes no sense, and it should not be rewarded for what should have been a straightforward case. The Court does not know how much Jasmine incurred

---

[5] FFN also asks this Court to award its Westlaw charges as part of its costs. However, electronic legal research expenses are considered a form of attorney fees rather than costs. *See Tchemkou v. Mukasey*, 517 F.3d 506, 512-13 (7th Cir. 2008) ("[T]his court has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges . . . and has held that the costs of computerized legal research are recoverable as part of an attorney-fee award."); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2014 WL 1097471, at *2 (N.D. Ill. Mar. 20, 2014). The Court thus considered FFN's legal research fees in determining a reasonable attorneys' fee award.

in fees, but it was also surely too much. And as FFN aptly notes in its motion, "[t]he party responsible for creating excessive legal costs must bear them itself in the end." R. 113 at 10-11 (quoting *Riviera*, 517 F.3d at 929).

## Conclusion

For the reasons stated above, Jasmine's motion to strike [119] is granted in part and denied in part, and FFN is awarded $10,500 in attorneys' fees and costs.


ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge


Dated: August 8, 2019